UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
CARLOS ALFREDO MARURI MATAMOROS, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

ROSEMOUNT INTERIORS, INC., RYAN JAMES MCCORMACK, and OLIMPO C. BOBADILLA, as individuals,

Defendants.
---------------------------------------------------------------------X

**COLLECTIVE ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff, **CARLOS ALFREDO MARURI MATAMOROS**, individually and on behalf of all others similarly situated, (hereinafter referred to as "Plaintiff") (hereinafter referred to as "Plaintiff"), by and through his attorneys, Helen F. Dalton & Associates, P.C., alleges, upon personal knowledge as to himself and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and the New York State Human Rights Law, New York State Executive Law, §§ 296 *et seq.* ("NYSHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of his disability, including Defendants' failure to reasonably accommodate his disability and ultimately refusing to reinstate and terminating Plaintiff following his medically necessary leave and recovery from surgery.

2. Plaintiff also brings this action against Defendants to recover damages for violations of state and federal wage and hour laws arising out of Plaintiff's employment at ROSEMOUNT INTERIORS, INC., located at 655 Mclean, Ste 30, Yonkers, New York 10705.

3. As a result of the violations of Federal and New York State labor laws delineated below, Plaintiff seeks compensatory damages and liquidated damages. Plaintiff also seeks interest, attorneys' fees, costs, and all other legal and equitable remedies this Court deems appropriate.

## JURISDICTION AND VENUE

4. Jurisdiction of the Court is proper under 42 U.S.C. § 2000e-5(f)(3); and 28 U.S.C. §§ 1331 and 1343.
5. The Court has supplemental jurisdiction over the claims Plaintiff has brought under state law pursuant to 28 U.S.C. § 1367.
6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) as a substantial part of the acts and/or omissions complained of occurred in this judicial district.
7. Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action by: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 11, 2026 (b) receiving a Notice of Right to Sue from the EEOC on September 14, 2026 and (c) commencing the action within 90 days of the issuance of the Notice of Right to Sue by the EEOC.

## PARTIES

### *The Plaintiff*

8. Plaintiff, CARLOS ALFREDO MARURI MATAMOROS, residing in Islandia, New York, was employed by Defendants as a painter while performing related construction duties, from in or around April 2025 until in or around November 2025.

### *The Corporate Defendant*

### *ROSEMOUNT INTERIORS, INC.*

9. At all relevant times hereto, Defendant ROSEMOUNT INTERIORS, INC. is a domestic business corporation organized under the laws of New York, with a principal

executive and service of process address at 655 Mclean, Ste 30, Yonkers, New York 10705.

10. At all relevant times hereto, Defendant ROSEMOUNT INTERIORS, INC. acted by and through its agents, servants, and employees, each of whom acted at all times relevant in the course and scope of their employment with and for Defendant ROSEMOUNT INTERIORS, INC.

11. Upon information and belief, ROSEMOUNT INTERIORS, INC. exercised control over Plaintiff's employment, including his work assignments, schedule, leave, and return to work.

12. During all relevant times, Plaintiff performed work for the benefit of ROSEMOUNT INTERIORS, INC.

13. Upon information and belief, ROSEMOUNT INTERIORS, INC. made its own employment decisions with respect to Plaintiff, including decisions regarding his medical leave, accommodation, and termination.

14. At all times relevant to the allegations contained in the complaint, Corporate Defendant was, and is, an enterprise engaged in interstate commerce within the meaning of the FLSA in that ROSEMOUNT INTERIORS, INC., (i) has purchased and supplied goods, tools, and supplies for its business through the streams and channels of interstate commerce, and has had employees engaged in interstate commerce, and/ or in the production of goods intended for commerce, and handle, sell and otherwise work with goods, equipment and material that have been moved in or produced for commerce by any person: and (ii) has had annual gross volume of sales of not less than $500,000.00.

15. Accordingly, at all relevant times, Defendant ROSEMOUNT INTERIORS, INC. acted as Plaintiff's employer within the meaning of Title VII, the ADA, and the NYSHRL, FLSA AND NYLL.

***Individual Defendants***
***RYAN JAMES MCCORMACK***

16. Upon information and belief, at all relevant times hereto, Defendant RYAN JAMES MCCORMACK owned and operated ROSEMOUNT INTERIORS, INC.

17. Upon information and belief, at all relevant times hereto, Defendant RYAN JAMES MCCORMACK was responsible for overseeing the operations of ROSEMOUNT INTERIORS, INC.
18. Upon information and belief, at all relevant times hereto, Defendant RYAN JAMES MCCORMACK had the power and authority over personnel and payroll decisions of ROSEMOUNT INTERIORS, INC., including decisions concerning Plaintiff's employment, wages, work schedule, and termination.
19. Upon information and belief, at all relevant times hereto, Defendant RYAN JAMES MCCORMACK had the power and authority to hire, fire, or affect the terms and conditions of Plaintiff's employment.
20. At all times relevant, Defendant RYAN JAMES MCCORMACK was an "employer" within the meaning of the FLSA and NYLL.
21. Accordingly, Defendant RYAN JAMES MCCORMACK is individually liable under the NYSHRL for his participation in and/or aiding and abetting the unlawful discriminatory practices described herein.

## ***OLIMPO C. BOBADILLA***

22. At all relevant times hereto, Defendant OLIMPO C. BOBADILLA was Plaintiff's foreman and direct supervisor at ROSEMOUNT INTERIORS, INC.
23. At all relevant times hereto, Defendant OLIMPO C. BOBADILLA had the authority to affect the terms and conditions of Plaintiff's employment, including his schedule, assignments, leave and return to work.
24. At all relevant times hereto, Defendant OLIMPO C. BOBADILLA was responsible for overseeing aspects of the daily operations at ROSEMOUNT INTERIORS, INC. and directly supervised Plaintiff.
25. At all times relevant, Defendant OLIMPO C. BOBADILLA was an "employer" within the meaning of the FLSA and NYLL.
26. Moreover, Defendant OLIMPO C. BOBADILLA was aware of Plaintiff's medical condition and need for surgery and was personally involved in the decision not to reinstate Plaintiff following his medically necessary leave.

27. Accordingly, Defendant OLIMPO C. BOBADILLA was individually liable under the NYSHRL for his participation in and/or aiding and abetting the unlawful discriminatory practices described herein.

## FACTUAL ALLEGATIONS

### *i. Wage and Hour Allegations*

28. Plaintiff CARLOS ALFREDO MARURI MATAMOROS was employed by Defendants as a painter while performing related construction duties for Defendants, from in or around April 2025 until in or around November 2025.
29. Plaintiff regularly worked approximately five (5) days per week from in or around April 2025 until in or around September 2025.
30. Plaintiff regularly worked from approximately eight-and-a-half (8.5) hours per day from in or around April 2025 until in or around September 2025.
31. Thus, Plaintiff was regularly required to work approximately forty-two-and-a-half (42.5) hours per week from in or around April 2025 until in or around September 2025.
32. Plaintiff was paid by Defendants an hourly rate of approximately $25.00 per hour for up to 40 hours per week from in or around April 2025 until in or around September 2025.
33. However, Plaintiff was not compensated at all for approximately two-and-a-half (2.5) hours of overtime worked per week.
34. Plaintiff was primarily paid via check/direct deposit.
35. Although Plaintiff worked approximately forty-two-and-a-half (42.5) hours per week from in or around April 2025 until in or around September 2025 Defendants did not pay Plaintiff time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL.
36. Upon information and belief, Defendants willfully failed to post notices of the overtime wage requirements in a conspicuous place at the location of his employment as required by the FLSA and NYLL.
37. Upon information and belief, Defendants failed to provide Plaintiff with a wage notice at the time of his hire or at any time during his employment in violation of the NYLL.

38. Defendants failed to provide Plaintiff with an accurate wage statement that included all hours worked and all wages received each week when Plaintiff was paid in violation of the NYLL.
39. As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from Plaintiff's inability to identify Plaintiff's employer to remedy his compensation problems, lack of knowledge about the rates of pay he was receiving and/or should have received for his regular hours and overtime hours, terms, and conditions of his pay, and furthermore, an inability to identify his hourly rate of pay to ascertain whether he was being properly paid in compliance with the FLSA and NYLL – which he was not.
40. Furthermore, Defendants' alleged willful failures to provide Plaintiff with these documents prevented Plaintiff from being able to calculate his hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours as required by the FLSA and NYLL.

***ii. Discrimination and Termination of Plaintiff's Employment on the Basis of His Disability***

41. Plaintiff CARLOS ALFREDO MARURI MATAMOROS was employed by Defendants as a painter while performing related construction duties for Defendants, from in or around April 2025 until in or around November 2025.
42. During his period of employment, Plaintiff consistently performed his duties in a satisfactory manner. Plaintiff was never disciplined, reprimanded, or issued any warnings regarding his performance.
43. On or about June 22, 2025, Plaintiff was involved in a motor vehicle accident while traveling to work and was transported to the Emergency Department at Jamaica Hospital.
44. While receiving medical treatment, Plaintiff informed his foreman, Defendant OLIMPO C. BOBADILLA, of the accident via text message.
45. Defendant OLIMPO C. BOBADILLA acknowledged Plaintiff's message and was therefore aware that Plaintiff had been injured and required medical attention.

46. On or around June 24, 2025, Plaintiff returned to work and began receiving physical therapy treatments for the injuries he sustained in the motor vehicle accident.
47. In or around late August and early September 2025, Plaintiff received two injections to manage the pain resulting from his injuries.
48. Plaintiff was subsequently diagnosed with a torn meniscus in his left knee, for which he required surgery.
49. Plaintiff informed Defendant OLIMPO C. BOBADILLA of his medical condition and the need for surgery.
50. On or around September 27, 2025, Plaintiff informed Defendant OLIMPO C. BOBADILLA via text message that he was scheduled to undergo surgery on September 29, 2025.
51. After receiving no response, Plaintiff also informed Defendant OLIMPO C. BOBADILLA of his upcoming surgery in person and was reassured that he could return to work once he had recovered from the surgery.
52. On September 29, 2025, Plaintiff underwent left knee surgery and was required by his medical providers to take medically necessary leave to recover.
53. Following his surgery, Plaintiff informed Defendant OLIMPO C. BOBADILLA that he anticipated requiring approximately two (2) weeks off from work, although the full duration of his recovery period had not yet been determined by his medical provider.
54. On or around October 15, 2025, Plaintiff's medical provider, OrthoSpine Solutions, issued a medical note confirming that Plaintiff was medically unable to work from September 29, 2025 through November 13, 2025, following his knee surgery and given the time needed to recover from the surgery.
55. Plaintiff also provided Defendant OLIMPO C. BOBADILLA with medical documentation confirming his anticipated return-to-work date.
56. During Plaintiff’s recovery period, approximately one week after Plaintiff's October 15, 2025 medical appointment, Defendant OLIMPO C. BOBADILLA contacted Plaintiff to inquire about his medical condition and anticipated return to work.
57. During this conversation, Plaintiff informed Defendant OLIMPO C. BOBADILLA that he remained on medically necessary leave and would be unable to return to work until November 13, 2025.

58. Plaintiff remained out of work from approximately September 29, 2025 through November 13, 2025, while recovering from surgery and attending medically necessary treatments.

59. On or around November 13, 2025, Plaintiff contacted Defendant OLIMPO C. BOBADILLA via text message and informed him that he was medically cleared and able to return to work on November 14, 2025.

60. However, despite Plaintiff's willingness and ability to resume his employment, Defendant OLIMPO C. BOBADILLA informed Plaintiff that he could not return to work at this time and that he would contact him when work became available.

61. Thereafter, Defendant OLIMPO C. BOBADILLA failed to contact Plaintiff or provide him with any further work assignments.

62. In or around November 2025, Plaintiff spoke with his coworker, Paul Bernal, who informed him that Defendants continued to have substantial work available and were actively hiring additional employees, despite the fact that they did not let Plaintiff return to work.

63. Despite the reported availability of work, Defendants failed to reinstate Plaintiff following his medically necessary leave and recovery from surgery and never reinstated Plaintiff to his position or further contacted Plaintiff about returning to work.

64. As a result, Defendants effectively terminated Plaintiff's employment as a result of his disability and his need for time off to recover from his injuries.

65. At all relevant times, Defendants were aware of Plaintiff's medical condition, including his injuries sustained in the motor vehicle accident, his need for surgery, his medically necessary recovery period, and his intention to return to work following his recovery and, despite this, failed to accommodate him with the necessary time off so that he could recover from his injuries and return to work.

66. Defendants failed to provide Plaintiff with a reasonable accommodation in the form of medically necessary leave and reinstatement upon his return, and instead effectively terminated his employment following his recovery from surgery.

67. Thus, Plaintiff has been unlawfully discriminated against on the basis of his actual and/or perceived disability, in violation of the NYSHRL and ADA.

68. Defendants acted intentionally and with discriminatory motive in refusing to reinstate Plaintiff following his medical leave despite having been advised that Plaintiff was medically cleared and available to return to work.
69. As a result of Defendants' conduct, Plaintiff has suffered emotional distress, including feelings of humiliation, embarrassment, anxiety, and frustration.
70. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer loss of income, salary, benefits, and other compensation, as well as future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary damages.
71. Plaintiff has also suffered additional pecuniary and non-pecuniary losses as a result of Defendants' unlawful conduct.
72. As a result of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court.
73. Defendants' conduct was willful, wanton, and carried out with reckless disregard for Plaintiff's rights.
74. Accordingly, Plaintiff demands punitive damages as against Defendants.

## COLLECTIVE ACTION ALLEGATIONS

75. Plaintiff brings this action on behalf of himself, and other employees similarly situated as authorized under the FLSA, 29 U.S.C. § 216(b). The employees similarly situated are the collective class.
76. Collective Class: All persons who are or have been employed by the Defendants as painters or other similarly titled personnel with substantially similar job requirements and pay provisions, who were performing the same sort of functions for Defendants, other than the executive and management positions, who have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay required minimum and overtime wage compensation.
77. Upon information and belief, Defendants employed approximately 15 or more employees within the relevant time period who were subjected to similar payment structures.

78. Upon information and belief, Defendants suffered and permitted Plaintiff and the Collective Class to work more than forty hours per week without appropriate overtime compensation.
79. Defendants' unlawful conduct has been widespread, repeated, and consistent.
80. Upon information and belief, Defendants had knowledge that Plaintiff and the Collective Class performed work requiring overtime pay.
81. Defendants' conduct as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff and the Collective Class.
82. Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the Collective Class, and as such, notice should be sent to the Collective Class. There are numerous similarly situated current and former employees of Defendants who have been denied overtime pay in violation of the FLSA and NYLL, who would benefit from the issuance of a Court-supervised notice of the present lawsuit, and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.
83. The questions of law and fact common to the putative class predominate over any questions affecting only individual members.
84. The claims of Plaintiff are typical of the claims of the putative class.
85. Plaintiff and his counsel will fairly and adequately protect the interests of the putative class.
86. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FIRST CAUSE OF ACTION
### Overtime Wages Under The Fair Labor Standards Act

87. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.
88. Plaintiff has consented in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).
89. At all times relevant to this action, Plaintiff was engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

90. At all times relevant to this action, Defendants were employers engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

91. Defendants willfully failed to pay Plaintiff's overtime wages for hours worked in excess of forty (40) hours per week at a wage rate of one and a half (1.5) times the regular wage, to which Plaintiff was entitled under 29 U.S.C. §§206(a) in violation of 29 U.S.C. §207(a)(1).

92. Defendants' violations of the FLSA as described in this Complaint have been willful and intentional. Defendants have not made a good effort to comply with the FLSA with respect to the compensation of the Plaintiff.

93. Due to Defendants' FLSA violations, Plaintiff are entitled to recover from Defendants, jointly and severally, their unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

## SECOND CAUSE OF ACTION
**Overtime Wages Under New York Labor Law**

94. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

95. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§2 and 651.

96. Defendant failed to pay Plaintiff's overtime wages for hours worked in excess of forty hours per week at a wage rate of one and a half (1.5) times the regular wage to which Plaintiff were entitled under New York Labor Law §652, in violation of 12 N.Y.C.R.R. 137-1.3.

97. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an amount equal to their unpaid overtime wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest in accordance with NY Labor Law §198(1-a).

## THIRD CAUSE OF ACTION
## Violation of the Notice and Recordkeeping Requirements of the New York Labor Law

98. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

99. Defendants failed to provide Plaintiff with a written notice, of his rate of pay, regular pay day, and such other information as required by NYLL §195(1).

100. Defendants are liable to Plaintiff in the amount of $5,000.00 together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION
## Violation of the Wage Statement Requirements of the New York Labor Law

101. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

102. Defendants failed to provide Plaintiff with wage statements upon each payment of wages, as required by NYLL §195(3)

103. Defendants are liable to Plaintiff in the amount of $5,000.00 together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

104. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the complaint.

105. The claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's disability.

106. Defendants engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff because of his disability.

**SIXTH CAUSE OF ACTION**

**DISCRIMINATION UNDER THE ADA**

107. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the complaint.

108. Americans with Disability Act, as amended, 42 USCS § 12112(b)(5) provides that it shall be an unlawful employment practice for an employer to:

> "(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant."

109. Defendants engaged in unlawful discriminatory employment practices prohibited by the Americans with Disability Act by discriminating against Plaintiff because of his disability and refusing to reinstate Plaintiff following his medically necessary leave and recovery from surgery, thereby effectively terminating his employment.

**SEVENTH CAUSE OF ACTION**

**DISCRIMINATION UNDER THE NYSHRL**

110. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the Complaint as if more fully set forth herein at length.

111. Executive Law § 296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

112. Defendants engaged in unlawful discriminatory employment practices by discriminating against Plaintiff because of his disability. Due to Defendants' unlawful discriminatory employment practices, Defendants refused to reinstate Plaintiff following his medically necessary leave and recovery from surgery, thereby effectively terminating his employment.

**WHEREFORE**, Plaintiff respectfully requests that judgment against the Defendants:

a. Declaring Defendants' conduct complained of herein to be in violation of Plaintiff's rights under the FLSA, the New York Labor Law, and its regulations;
b. Declaring that Defendants engaged in unlawful employment practices prohibited by the Title VII, ADA, and NYSHRL, in that Defendants discriminated against Plaintiff on the basis of his disability;
c. Awarding Plaintiff punitive damages;
d. Awarding Plaintiff unpaid overtime wages;
e. Awarding Plaintiff liquidated damages pursuant to 29 U.S.C. §216 and New York Labor Law §§198(1-a), 663(1);
f. Awarding Plaintiff prejudgment and post-judgment interest;
g. Awarding Plaintiff the costs of this action together with reasonable attorneys' fees; and
h. Awarding such and further relief as this court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: October 23, 2026
Kew Gardens, New York

Roman Avshalumov

Roman Avshalumov, Esq.
HELEN F. DALTON & ASSOCIATES, P.C.
*Attorneys for Plaintiff*
80-02 Kew Gardens Road Suite 601
Kew Gardens, New York 11415
Tel.: (718) 263-9591

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS ALFREDO MARURI MATAMOROS, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

ROSEMOUNT INTERIORS, INC., RYAN JAMES MCCORMACK, and OLIMPO C. BOBADILLA, as individuals,

Defendants.

**COLLECTIVE ACTION COMPLAINT**

HELEN F. DALTON & ASSOCIATES, P.C.
*Attorneys for Plaintiff*
80-02 Kew Gardens Road, Suite 601
Kew Gardens, New York 11415
Phone (718) 263-9591
Fax (718) 263-9598

*via Secretary of State service*:
**ROSEMOUNT INTERIORS, INC. (DOS ID:3277275)**
655 MCLEAN AVE, STE 30, YONKERS, NY, 10705

*Via personal service:*
**ROSEMOUNT INTERIORS, INC.**
13 Fullerton Ave., Yonkers, NY 10704

**RYAN JAMES MCCORMACK**
13 Fullerton Ave., Yonkers, NY 10704
38 Highview Ter, Yonkers NY 10705-4722

**OLIMPO C. BOBADILLA**
13 Fullerton Ave., Yonkers, NY 10704
3 Undercliff St Apt 2B, Yonkers NY 10705-7627